UNITED STATES DISTRICT COURT
SOUTHER DISTRICT OF FLORIDA

Case No. 10–21951–CIV-TORRES

Consent Case

JESUS CABRERA JARAMILLO, in his
individual Capacity as the personal
representative of the estate of Alma Rosa
Jaramillo, Jane Doe, in her capacity as the
personal representative of the estate of
Eduardo Estrada, and John Doe, in his
individual capacity,

   Plaintiffs,

v.

CARLOS MARIO JIMENEZ NARANJO,
also known as "Macaco," "El Agricultor,"
"Lorenzo Gonzalez Quinchia," and
"Javier Montanez,"

   Defendant.
_____/

# ORDER ON DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

This matter is before the Court on Defendant Carlos Mario Jiménez Naranjo's ("Defendant") Motion to Dismiss Plaintiffs Jesus Cabrera Jaramillo, Jane Doe, and John Doe's (collectively, "Plaintiffs") Second Amended Complaint ("SAC") [D.E. 110]. The Court has considered Defendant's motion [D.E. 110], Plaintiffs' response [D.E. 111], and pertinent portions of the record. For the reasons that follow, Defendant's Motion to Dismiss Plaintiffs' Complaint is **GRANTED.**

1

## *I. BACKGROUND*

Plaintiffs bring this action against Defendant pursuant the Torture Victim Protection Act ("TVPA"), Pub.L. No. 102–256, 106 Stat. 73 (1992) (codified at 28 U.S.C. § 1350 (Historical and Statutory Notes)) for torts committed in Colombia that violate international law. [D.E. 109]. Moreover, Plaintiffs seek to introduce in supplemental Colombian law claims via 28 U.S.C §1367. [*Id*.]. According to the Second Amended Complaint ("SAC"), the allegations of which we assume are true for purposes of this motion, Plaintiffs and Defendant are citizens of Colombia. Plaintiffs are from the Middle Magdalena River region of northwest Colombia that was occupied by Colombian paramilitaries called Bloque Central Bolivar ("BCB"), a division of the United Self–Defense Forces of Colombia ("AUC"). Defendant was a high commander of BCB from about 2000–2005. [*Id*.].

Paramilitary groups were introduced and used by the Colombian government to fight guerilla groups causing civil unrest in areas including the Middle Magdalena River region. [*Id*.]. These groups were consolidated into the AUC in 1997 and given support of the Colombian army and local government officials. [*Id*.]. The AUC infiltrated areas in the country where the Colombian government had limited or no state presence. [*Id*.]. The AUC received tangible benefits from the Colombian government, like transportation, munitions, and communications, and it funded itself through the production, sale, and trafficking of narcotics. [*Id*.]. From about 1997 to 2007, the AUC attacked civilian populations throughout Colombia, including the Middle Magdalena River region. [*Id*.].

Particularly in the Middle Magdalena River region, the BCB controlled local farms, municipalities, and the selection of mayors, judges, and directors of public hospitals. [*Id.*]. The BCB influenced control through corruption, torture, kidnapping, and extrajudicial killings. [*Id.*]. To control the drug trade, the BCB targeted members of the Program for Peace and Development ("PDP"), a non-governmental organization that provides farmers with alternatives to coca cultivation. [*Id.*]. The BCB murdered 27 PDP leaders between 1997 and 2009. [*Id.*].

As part of the Colombian government's efforts for peacemaking, Colombia called for a formal AUC ceasefire and agreement to disband in 2005. See Jose E. Arvelo, *Note, International Law and Conflict Resolution in Colombia: Balancing Peace and Justice in the Paramilitary Demobilization Process*, 37 Geo. J. Int'l L. 441, 413 (2006). The Colombian government established a Justice and Peace Process to offer incentives for paramilitaries to give up their arms in exchange for sentencing leniency and provide victims and their families with redress. *Id*. at 413–14.

### A.   *Plaintiffs*

Plaintiffs seek compensatory and punitive damages for torts in violation of international and domestic law under the TVPA and under Colombian law. [D.E. 109]. The decedents were members of the PDP, the non-governmental organization that was targeted by the BCB. [*Id.*]. Specifically, Jane Doe and John Doe are the beneficiaries of the Estate of Eduardo Estrada and seek to recover for extrajudicial killing, war crimes, and crimes against humanity. [*Id.*]. The beneficiaries of the

Estate of Alma Rosa Jaramillo bring action for torture, cruel, inhuman or degrading treatment or punishment, extrajudicial killing, war crimes and crimes against humanity. [*Id*.].

Plaintiffs sought legal remedies against Defendant through Colombia's Justice and Peace Process, but Defendant's extradition to the United States for other crimes stopped the process. [*Id*.]. Plaintiffs contend Defendant is amenable to suit only in the United States. [*Id*.].

B.  *Defendant*

From the BCB's inception in 2000 until it disbanded in 2005, Defendant was the high commander of the BCB. Defendant maintained and exercised command and control over his paramilitary forces in the BCB at all relevant times. [*Id*.]. In 2008, Defendant was extradited to the United States, and subsequently he was indicted on drug-related criminal charges in the United States District Court for the Southern District of Florida and the United States District Court for the District of Columbia. [*Id*.]. He is currently serving a thirty-three year prison sentence at the Miami Federal Detention Center. [*Id*.].

C.  *Procedural History*

Plaintiffs brought suit against Defendant on June 14, 2010 pursuant to the Alien Torture Statute ("ATS") and the Torture Victims Protection Act ("TVPA"). [D.E. 1]. Defendant moved to dismiss, but the Court stayed the motion pending the resolution of an ATS jurisdictional issue in *Kiobel v. Royal Dutch Petroleum Co.*, ––

U.S. ——, 133 S. Ct. 1659, 185 L.Ed.2d 671 (2013). [D.E. 74]. Plaintiffs filed an Amended Complaint (AC) to address the Supreme Court's ruling while alleging extrajudicial killing, torture, cruel, inhuman or degrading treatment or punishment, war crimes, and crimes against humanity against the Defendant in his capacity as a leader of the BCB. [D.E. 91].

The Defendant moved to dismiss the AC on the grounds that the Court lacked personal jurisdiction over the Defendant, the ATS claims lacked subject matter jurisdiction, and the TVPA claims failed to state a claim of relief plausible on its face. [D.E. 192]. Plaintiffs responded [D.E. 93].

We dismissed the ATS claims because they occurred in Colombia and lacked any connection to the territory of the United States. We did not dismiss Estrada's TVPA claims but we did dismiss Jaramillo's TVPA claims for a lack of facial plausibility. [D.E. 101].

Plaintiff Jaramillo then pleaded new facts in a Second Amended Complaint ("SAC") to meet the plausibility standard. [D.E. 109] All Plaintiffs also requested that the court exercise supplemental jurisdiction over Colombian Penal Code claims, for both Estrada and Jaramillo, pursuant to §1367. [*Id.*].

Defendant now seeks dismissal of the SAC's new claims. [D.E. 110]. Defendant argues that Jamarillo's TVPA claims still fail to state a facially plausible claim of relief and that both Plaintiffs' request for supplemental jurisdiction should be dismissed as it raises a complex issue of foreign law. [*Id.*]

## II. ANALYSIS

A. *<u>Jaramillo's TVPA Claims</u>*

A well-pleaded complaint will survive a motion to dismiss "even if it strikes a savvy judge that actual proof of these facts is improbable, and that a recovery is very remote and unlikely." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1965 (2007) (citation omitted). Still, it must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Twombly,* 550 U.S. at 570). However, "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis,* 297 F.3d 1182, 1188 (11th Cir. 2002). The Court must view the allegations in the complaint as true and in a light most favorable to the plaintiff. *See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 164 (1993); *Watts v. Florida Int'l Univ.,* 495 F.3d 1289, 1295 (11th Cir. 2007).

To plead a TVPA claim, a plaintiff must allege with specificity that the defendant, while under actual or apparent authority and/or color of law of a foreign nation, committed extrajudicial killing or torture. The remedies must not be exhausted in the place that the conduct occurred, and the statute of limitations must not have passed. A plaintiff's failure to plead any of the elements of a TVPA claim results in a failure to state a claim upon which relief can be granted. *See*

*Sinaltrainal v. Coca–Cola,* 578 F.3d 1252, 1269–70 (11th Cir.2009), abrogated on other grounds by *Mohamad v. Palestinian Authority,* —— U.S. ——, 132 S.Ct. 1702 (2012); *Romero v. Drummond Company, Inc.,* 552 F.3d 1303, 1315 (11th Cir. 2008).

A TVPA action may be brought by non-citizens against "an individual who, under actual or apparent authority, or color of law, of any foreign nation—subjects an individual to torture" or "subjects an individual to extrajudicial killing." Torture Victim Protection Act, § 2(a). An individual acts under color of law when actions are made together with state officials or with significant state aid. *See Sinaltrainal v. Coca–Cola,* 578 F.3d at 1264; *Khulumani v. Barclay Nat'l Bank Ltd.,* 504 F.3d 254, 260 (2d Cir. 2007). In interpreting the state action requirement, the Eleventh Circuit has relied on "the principles of agency law and to jurisprudence under 42 U.S.C. § 1983." *Aldana,* 416 F.3d at 1247 (internal citation omitted).

When a claim requiring state action is based on conduct by a private actor, "there must be proof of a symbiotic relationship between a private actor and the government that involves the torture or killing alleged in the complaint to satisfy the requirement of state action." *Romero,* 552 F.3d at 1317; *see also Sinaltrainal,* 578 F.3d at 1266 ("We demand allegations of a symbiotic relationship that involves the torture or killing alleged in the complaint to satisfy the requirement of state action.") (quotation and citation omitted); *Rayburn ex rel. Rayburn v. Hogue*, 241 F.3d 1341, 1348 (11th Cir. 2001) ("The Supreme Court has indicated that the symbiotic relationship must involve the specific conduct of which the plaintiff complains.") (quotation and citation omitted).

In *Sinaltrainal,* the Eleventh Circuit found that the plaintiffs failed to sufficiently plead that paramilitary forces in Colombia were state actors or sufficiently connected to the Colombian government to claim they were acting under color of law. *See Sinaltrainal v. Coca–Cola,* 578 F.3d at 1270. In *Sinaltrainal,* "[m]ere toleration of the paramilitary forces does not transform such forces' acts into state acts; moreover there are no allegations the Colombian government was aware of, much less complicit in, the murder and torture ... allege[d]." *Id*. (internal citation omitted). Despite extensive allegations that the Colombian government cooperated, assisted, and worked in concert with the paramilitaries, the Court found that because the plaintiff did not connect the state action to the act of killing and torture alleged in the complaint, the TVPA color of law element was not satisfied. *See id*. ("The plaintiffs' conclusory allegations that the paramilitary security forces acted under color of law is not entitled to be assumed true and is insufficient to allege state-sponsored action."); *see also Romero*, 552 F.3d at 1317–18 (finding the proof of a general relationship between the AUC and the Colombian government was "not enough" to establish state action because the state action was not linked to the "murders described in the complaint".).

In dismissing Jaramillo's claims, we similarly concluded that the complaint lacked a sufficient factual material to establish a symbiotic or direct connection between state actors and Jaramillo's' torture or murder.  Therefore, we found that Plaintiff's claims did not establish the color of law element necessary for a TVPA claim.

8

In the SAC, Plaintiff Jaramillo attempts to establish this symbiotic or direct relationship by introducing new facts. The SAC identifies ex-mayor Loher Diaz; his wife, Nilly Janit Orduna; Mayor Marcelo Rincones; City Councilman Manuel Payares; and Judge Roberto Caraballo as state actors "involved in directing" or "conspired with" Jaramillo's assassins. [D.E. 109 at 9].

Jaramillo alleges that Mayor Marcelo Rincones and Judge Roberto Caraballo were involved in "directing" or "conspired with" Jaramillo's assassins. [*Id.*]. Plaintiff reaches this conclusion on Rincones and Carballo's relationship with the AUC and Jaramillo's previous corruption litigation against them. [*Id.*].  Importantly, however, Plaintiff provides no facts that support the required symbiotic relationship between them and Jaramillo's murder. The court can draw inferences from the facts presented, but they must be reasonable. "'Pleadings must be something more than an ingenious academic exercise in the conceivable.' " *Wagner v. Daewoo Heavy Indus. Am. Corp.*, 289 F.3d 1268, 1270 (11th Cir.2002) (discussing generally what might be a reasonable inference in the pleading context). Because the court cannot make the quantum leap from a prior lawsuit and the official's relationship with the AUC to reach the conclusion they had a direct connection with Jaramillo's murder, the complaint as it relates to Mayor Rincones and Judge Caraballo fails to meet the plausibility standard.

In her SAC Plaintiff modifies her accusations against councilman Manuel Payares. [*Id.*]. In her AC, Jaramillo alleges that she filed a slander suit against city councilman Manuel Payares, a BCB sympathizer, in response to him telling

9

Defendant's subordinates that Jaramillo was a collaborator with the FARC guerillas. [D.E. 91]. In the SAC, Plaintiff alleges that Payares informed Defendant's subordinates at a public meeting where an AUC commander was in attendance. [D.E. 109]. But again we fail to see the importance or materiality of this addition. That the meeting took place in public could easily suggest that a third-party heard the accusations and murdered Jaramillo instead of a BCB member. The presence of an AUC commander is similarly beside the point.  If the AUC commander was a subordinate of Defendant, the Plaintiff has just stated the rank of a party we already knew was present. Otherwise, the case against Defendant in his capacity as a superior officer is weakened. None of this new information remedies the Plaintiff's insufficiently plead facts. The complaint fails to plausibly establish a symbiotic relationship or direct link between a Payares and Jaramillo's murder.

Next, Plaintiff initially claimed she had investigated and litigated several high-profile human rights, corruption, and money laundering claims against the chief administrator of the Morales Hospital. [D.E. 91]. In the SAC, Plaintiff identifies ex-mayor Loher Diaz's wife, Nilly Janit Mateus Orduna, as the hospital administrator. She identifies them as being closely connected to the BCB. [D.E. 109]. Plaintiff further alleges that Jaramillo's physical killers were Diaz's bodyguards from his time as mayor of Morales. [*Id*.].

Accepting these facts as true, as we must for purposes of this motion, Plaintiff fails to state a facially plausible claim. At the time of Jaramillo's murder, Diaz was no longer a mayor and plaintiff does not direct us to any law or authority

that supports the concept that a former government official is treated as a state actor. Plaintiff further fails to establish that Diaz's wife is a government official. Assuming the she was the chief administrator of a public hospital, and therefore indirectly a state actor, her involvement still does not satisfy the "color of law" requirement. *See, e.g., Almand v. DeKalb Cnty.*, Ga., 103 F.3d 1510, 1513 (11th Cir.1997) ("One must be more than a mere government actor; A defendant acts under color of state law when she deprives the plaintiff of a right through the exercise of authority that she has by virtue of her government office or position.") The bodyguards who allegedly murdered Jaramillo were her husband's bodyguards. As such, even if Orduna did direct or conspire with them to kill Jaramillo, her power over the bodyguards was not directly or indirectly related to her authority as a hospital administrator. And no allegations are raised for the Court to make that link. So as Diaz and Orduna were not acting under the color of law, the complaint fails to plausibly establish a symbiotic relationship or direct link between a government actor and Jaramillo's murder.

Finally, Plaintiff's SAC alleges that, after identifying Jaramillo's remains, her sister "asked the local police for help but the police refused to provide assistance." [*Id.* at 9]. We upheld Eduardo Estrada's TVPA claims because of police and government soldiers' alleged inaction in response to Estrada's murder. There, we held that "the allegation that government soldiers offered no help when they passed shows a symbiotic relationship because it could reflect the government purposefully not participating to stop any abuse or aid victims of BCB." [D.E. 101].

11

But Jaramillo's case is inapposite. In Estrada's case, we viewed the police's inaction as evidence of a symbiotic relationship because it occurred while Estrada lay dying. Here, Jaramillo's sister asked police for help days later, once Jaramillo's body was discovered. The law requires more than a failure to investigate an already committed crime; instead, the inaction must be directly tied to the crime itself. *Aldana*, at 1248-49 (stating that there must be a "basis to infer the police made a knowing choice to ignore Plaintiffs' alleged plight.") Consequently, this Plaintiff's claim still fails to meet the required plausibility standard.

Plaintiff's SAC contains the same factual shortfalls as the AC with regard to the new and old perpetrators; it still fails to establish a facially plausible symbiotic relationship or direct link between a state actor and the murder. Therefore, we are bound to dismiss Plaintiff Jaramillo's TVPA Claims.

### B.  *Estrada and Jaramillo's Supplemental Jurisdiction of Colombian Law Claims*

Federal Courts with original jurisdiction on a claim can exercise supplemental jurisdiction over any claim so related to the claims in the action that they form part of the same case or controversy. 28 U.S.C. § 1367. This jurisdiction is not limited to law claims based on national but also extends to claims based on foreign law. *See Romero v. Drummond Co.*, 552 F.3d 1303, 1318 (11th Cir. 2008); *Mamani v. Berzain*, 654 F.3d 1148, 1153 (11th Cir. 2011). Still, exercise of supplemental jurisdiction is not mandatory.  Courts may decline to exercise supplemental jurisdiction over a claim if it a) raises a novel or complex issue of state law, b) substantially predominates over the claim or claims over which the district

12

court has original jurisdiction, c) the district court has dismissed all claims over which it has original jurisdiction, or d) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. 28 U.S.C. § 1367(c). If any of the above conditions are present, the court can then consider other factors including judicial economy, convenience, fairness to the parties, and whether all the claims would be expected to be tried together when determining whether to exercise supplemental jurisdiction. *See Palmer v. Hosp. Auth. of Randolph Cnty.*, 22 F.3d 1559 (11th Cir. 1994).

Plaintiffs asks the court to exercise supplemental jurisdiction on purported civil liability under the Colombian Penal Code. Courts evaluating whether to apply Colombian law claims to TVPA claims have viewed them as raising complex issues of foreign law. *See Doe v. Drummond Co.*, 782 F.3d 576, 612 (11th Cir. 2015); *Romero*, 552 F.3d at 1318. In *Romero,* for instance, the court found it "impossible to navigate the complexities of the parties' submissions," or "to discern ... the Colombian law requisites for a wrongful death claim." *Id*.

We agree. To decipher the corresponding elements, precedent, and interpretation of a foreign penal code and apply it to a civil action in the United States would raise a highly complex issue of law. True, some of the evidence to be presented in this case will inevitably be in Spanish, but legal interpretation and analysis are far more complex issues than factual testimony. It would require the hiring of expert witnesses, legal translators, and hearings with conflicting testimony from Colombian law experts. We similarly conclude that exercising

supplemental jurisdiction over Colombian law claims would raise a complex issue of law and constitute an unnecessary use of judicial resources. We decline to exercise § 1367 supplemental jurisdiction in the present case over such claims.

### III. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss [D.E. 110] is **GRANTED.** Plaintiff Jaramillo's claims alleged in the Second Amended Complaint are DISMISSED with no further leave to amend. Plaintiff's Estrada's claims under the Colombian penal code are DISMISSED without prejudice.

**DONE AND ORDERED** in Chambers, Miami, Florida this 30th day of September, 2015.

/s/ Edwin G. Torres
EDWIN G. TORRES
United States Magistrate Judge